IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WAYNE HINNANT,                    :    CIVIL ACTION
                                  :    NO. 07-2632
    Plaintiff,                :
                                  :
    v.                        :
                                  :
                                  :
AMERICAN INGENUITY,               :
LLC et al.                        :
                                  :
    Defendants.               :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              MAY 21, 2008

I.    BACKGROUND

      Plaintiff Wayne Hinnant brings this action against
Defendants, American Ingenuity, LLC and its sole owner and
officer Nathaniel Bender.  In 1994, Hinnant invented and patented
a soap-dispensing body brush.  In order to develop his invention
for sale, on August 10, 2004, Hinnant entered into a Product
Development Contract with American Ingenuity.  In exchange for
$8,000, the contract required American Ingenuity to create and
deliver "1 set of plastic injection tooling necessary to make
[the] product" and "1 test piece per iteration for approval."
Deft.'s Mot. to Compel, Ex. A [hereinafter "PDC"], cl. 6.  Once
Defendants "prepare[d] between 20 and 100 . . . units of product
for shipment and deliver[ed] [them] to port for transport to
client," the contract was "considered complete."  Id., cl. 16.

      The contract imposed additional restrictions on

American Ingenuity, providing that "[a]ll tooling and samples created under this contract are the sole property of [Hinnant], and the tooling cannot be used for any purpose by [Defendants] without the express written consent of the client."  Id.  The contract also required that the soap brush be "offered for sale, development or production solely subject to the terms and conditions of this contract."  Id., cl. 15.  Moreover, "any information of [the parties] contained in this contract [must] be held in strictest confidence."  Id.

Most pertinent here, the Product Development Contract contained an arbitration clause:

> The Contractor and Client[1] agree to try to resolve <u>all disputes in connection with this contract</u> in a friendly manner.  If a dispute can not be resolved in this manner to the satisfaction of both parties within 60 days after either party gives notice to the other by fax or letter, then such dispute <u>shall be settled in accordance with the rules of the American Arbitration Association</u>.

PDC, cl. 17 (emphasis added).

The Product Development Contract was "completed" in Spring of 2006.  In July 2006, Hinnant alleges that he entered into an oral test marketing agreement with Bender, pursuant to which Defendants would manufacture 1,000 soap brushes for test marketing purposes, in exchange for $6,500.

Hinnant now alleges that Defendants misappropriated the

---

[1]      "Contractor" is defined as "American Ingenuity LLC."  "Client" is defined as "Wayne Hinnant."  PDC at 1.

tooling and are using it to manufacture soap brushes for their own benefit.  Hinnant brings claims for misappropriation, conversion, fraud, breach of fiduciary duty, false marking of patent, and several related claims.  Before the Court is Defendants' motion to compel arbitration or, in the alternative, to dismiss for improper venue or forum non conveniens, or transfer venue (doc. no. 21).[2]

II.  MOTION TO COMPEL ARBITRATION

To decide a motion to compel arbitration, the Court must determine "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement."  Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005) (quotation omitted).  It is the movant's burden to demonstrate both that a valid agreement exists and that its scope encompasses a particular dispute.[3]

_____

[2]    Hinnant filed the amended complaint without leave of court, and Defendants filed a motion to strike the amended complaint (doc. no. 18).  Subsequently, on September 19, 2007, Plaintiff informed the Court by letter that all parties consented to the filing of the amended complaint.  Defendants later attempted to withdraw their motion to strike (doc. no. 22), and filed the instant motion, which refers to the amended complaint.  Accordingly, the Court will deem the amended complaint to have been filed by consent of the parties pursuant to Federal Rule of Civil Procedure 15(a)(2), and Defendants' motion to strike and request to withdraw the motion to strike will be denied as moot.

[3]    "Motions to compel arbitration are evaluated, in the first instance, under the well-settled summary judgment standard set forth in [Rule 56(c)]."  Berkery v. Cross Country Bank, 256

Here, the ordinarily straightforward two-pronged inquiry is complicated by two facts: the Product Development Contract expired before Hinnant brought the instant claims, and the parties entered into an oral test marketing agreement subsequent to the Product Development Contract, which allegedly implicates the arbitration agreement.  These two facts require two extra analytical steps before the Court can complete the first prong of the inquiry, i.e., decide whether a valid agreement to arbitrate exists.  In other words, even if a valid agreement to arbitrate once existed under the Product Development Contract, the Court must also determine that the agreement to arbitrate <u>continued</u> to exist at the time that Hinnant brought the instant claims.  <u>See</u> <u>Litton Bus. Sys., Inc. v. Nat'l Labor Rels. Bd.,</u> 501 U.S. 190, 207-08 (1991); <u>Berkery v. Cross Country Bank</u>, 256 F. Supp. 2d 359, 368-69 (E.D. Pa. 2003).

Specifically, the first prong of the inquiry requires the Court to answer not one but three questions in this case. Did the Product Development Contract contain a valid arbitration agreement?  If so, did the subsequent oral test marketing

---

F. Supp. 2d 359, 364 n.3 (E.D. Pa. 2003).  Defendants must, through "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The court must consider all of the non-moving party's evidence and construe all reasonable inferences in the light most favorable to the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

agreement rescind the arbitration agreement?  If not, to what extent did the arbitration agreement survive the expiration of the Product Development Contract?  The answers to these questions will enable the Court to determine whether a valid arbitration agreement existed at the time Hinnant brought his claims.  Only then, if such an agreement existed, can the Court proceed to prong two of the inquiry--whether the particular dispute falls within the scope of that agreement.

A.   Existence of Agreement to Arbitrate

1.   Did the Product Development Contract contain a valid agreement to arbitrate?

The parties do not dispute that the Product Development Contract originally contained a valid arbitration clause stating that "all disputes in connection with this contract . . . shall be settled in accordance with the rules of the American Arbitration Association."  PDC, cl. 17.  The parties also agree that the arbitration clause binds all the parties in this case.[4]

---

[4]     That Bender is bound by the arbitration clause is not a foregone conclusion.  Bender signed the Product Development Contract in his corporate capacity, as "General Manager" of American Ingenuity.  See PDC, cl. 23.  "[A]n agent of a disclosed principal, even one who negotiates and signs a contract for her principal, does not become a party to the contract."  Bel-Ray Co., Inc. v. Chemrite Ltd., 181 F.3d 435, 445 (3d Cir. 1999). Nonetheless, under agency theory, "[b]ecause a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements."  Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121-22 (3d Cir. 1993) (permitting non-

> 2. Did the oral test marketing agreement
>    rescind the Product Development
>    Contract's agreement to arbitrate

An agreement to arbitrate contained in a contract may be rescinded by a subsequent agreement. See Berkery, 256 F. Supp. 2d at 368-69. However, an agreement generally to rescind the contract does not rescind the agreement to arbitrate contained in that contract absent an express intent to do so. See id. at 369 ("[The arbitration clause in the original contract] remained valid and enforceable at all pertinent times . . . even if the [subsequent agreement] cancelled the original [contract] because we find no express rescission of the arbitration provision.").

Hinnant argues that the oral test marketing agreement rescinded the parties' agreement to arbitrate. The amended complaint, however, only suggests briefly the existence of the oral agreement, see id. ¶¶ 34-35, and does not describe its terms in detail. In fact, the only term alleged is that "Mr. Hinnant [was] to pay [$6,500] for the production, at Mr. Bender's related facilities in China, of 1000 soap dispensing body brushes for

---

signatory broker to enforce arbitration clause signed by employer brokerage company where broker's conduct gave rise to dispute). Here, Bender was the sole owner and officer of American Ingenuity, and thus an agent of the company. Moreover, Bender's alleged misconduct was integral to and coextensive with the alleged misconduct of the company. Therefore, Bender is bound by the arbitration clause in the Product Development Contract.

delivery to [Defendants] so that [Defendants] could test market the product for and on behalf of Mr. Hinnant." Id.  More to the point, neither the allegations in the amended complaint nor any other evidence brought to bear by Hinnant shows that the oral test marketing agreement was intended to, or did in fact, rescind the Product Development Contract, let alone specifically rescind the arbitration clause contained therein.  Therefore, the Court finds that the oral test marketing agreement did not rescind the parties' agreement to arbitrate.

> 3.    To what extent did the agreement
>       to arbitrate survive the expiration
>       of the Product Development Contract?

Performance was completed under the Product Development Contract in or around "the Spring of 2006."  Am. Compl. ¶¶ 24, 33.  However, Hinnant did not bring the instant suit until June 22, 2007.  Defendants having failed to point to any evidence to the contrary, the Court finds that the Product Development Contract expired in 2006, before the instant suit was commenced.

Where a contract containing an agreement to arbitrate has expired, the Court must determine whether the agreement to arbitrate survived the expiration of the contract:

> [C]ontractual obligations will cease, in the ordinary
> course, upon termination of the [contract].  Exceptions
> are determined by contract interpretation. . . .
> [S]tructural provisions relating to remedies and
> dispute resolution--for example, an arbitration
> provision--may in some cases survive in order to

-7-

enforce duties <u>arising under</u> the contract.

<u>Litton</u>, 501 U.S. at 207-08 (emphasis added).[5]  In <u>Litton</u>, the
Court elaborated that a post-expiration claim may "arise under
the contract" only if:

> it involves facts and occurrences that arose before
> expiration, where an action taken after expiration
> infringes a right that accrued or vested under the
> agreement, or where, under normal principles of
> contract interpretation, the disputed contractual right
> survives expiration of the remainder of the agreement.

<u>Id.</u> at 206.  If a post-expiration claim "arises under" the
expired contract, as explained in <u>Litton</u>, then the agreement to
arbitrate survives expiration, but only with respect to that
claim.  For this reason, an arbitration agreement may survive the
expiration of the contract with respect to certain claims, but
not others.  <u>See, e.g.</u>, <u>Basketball Mktg. Co. v. Urbanworks
Entm't</u>, No. 04-3179, 2004 WL 2590506, at *7 (E.D. Pa. Nov. 10,
2004) (granting in part and denying in part motion to compel
arbitration under expired contract).

Because Hinnant brought his claims after the expiry of
the Product Development Contract, the contract's arbitration
clause survives only where: 1) Hinnant's claims involve facts and

---

[5]    Although <u>Litton</u> concerned an arbitration clause in a
collective bargaining agreement, it has been applied outside of
the collective bargaining context to ordinary contracts numerous
times.  <u>See, e.g.</u>, <u>Berkery</u>, 256 F. Supp. 2d at 368 n.8;
<u>Basketball Mktg. Co. v. Urbanworks Entm't</u>, No. 04-3179, 2004 WL
2590506, at *5 (E.D. Pa. Nov. 10, 2004); <u>Selas Fluid Processing
Corp. v. Ultra-Cast, Inc.</u>, No. 04-3179, 2004 WL 1622034, at *4-5
(E.D. Pa. July 20, 2004).

occurrences that arose before expiration, 2) Defendants' action taken after expiration infringes a right that accrued or vested under the agreement, or 3) under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.  <u>Litton</u>, 501 U.S. at 206.  As the instant dispute "consists of several claims, the court must determine on an issue-by-issue basis whether a party bears a duty to arbitrate."  <u>Trippe</u>, 401 F.3d at 532.

a.   Claims as to which the arbitration
     clause survives: Counts V and IX

Count V of the amended complaint for breach of fiduciary duty alleges that Defendants "purported to act with respect to the interest of plaintiff in a fiduciary and/or confidential capacity," but failed to act in such a manner.  Am. Compl. ¶ 50.  This claim involves "action taken after expiration [that] infringes a right that accrued or vested under agreement." <u>Litton</u>, 501 U.S. at 206.  Specifically, the obligation of confidentiality was <u>created by</u> the Product Development Contract. <u>See</u> PDC, cl. 15 ("[A]ny information of [the parties] contained in this contract [must] be held in strictest confidence.").  Therefore, the arbitration clause survives with respect to Count V.

Count IX for breach of trust alleges that "[t]he transfer and/or entrustment of the trade secret/idea/invention/

-9-

product/tooling by [Hinnant] to [Defendants] . . . was induced by fraud." Am. Compl. ¶ 60. This claim "involves facts and occurrences that arose before expiration" of the contract. Litton, 501 U.S. at 206. The very purpose of the Product Development Contract was to govern the transfer and entrustment of the soap brush and its associated intellectual property from Hinnant to Defendants. Count IX thus amounts to a claim that the Product Development Contract was fraudulently induced. Logically, in order to have fraudulently induced Hinnant to enter into the Product Development Contract, Defendants' conduct must have occurred before its formation, let alone its expiration. Thus, the arbitration clause survives with respect to Count IX.[6]

> b.   Claims as to which the
>      arbitration clause does not survive:
>      Counts I, II, III, IV, VI, VII, VIII, and X

In contrast to the claims above, Hinnant's property- and intellectual-property-based claims are not arbitrable because the Product Development Contract does not survive with respect to those claims. Under quite similar circumstances, a judge of this Court denied a motion to compel arbitration of claims resembling

---

[6]   Hinnant advances a claim of fraud in the inducement of the contract generally, as distinguished from fraud in the inducement of the agreement to arbitrate. If it is within the scope of the arbitration agreement, see infra Part II.B, such a claim is properly decided by the arbitrator. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 406 (1967).

Hinnant's.  See Basketball Mktg., 2004 WL 2590506 (Davis, J.).

In Basketball Marketing, the plaintiffs and defendant entered into a contract pursuant to which the defendant would market, manufacture, and distribute copies of plaintiff's videotape and other products bearing plaintiff's intellectual property.  See id. at *1.  The agreement provided the defendant with a limited license to use the plaintiff's intellectual property and reserved the plaintiff's rights and title to same.  See id.  The agreement also contained a broad arbitration clause.  See id. at *2.  The plaintiffs alleged that, after the expiration of the contract, the defendant continued to market their videotape without their permission, and brought claims for, inter alia, conversion, unjust enrichment, and trademark infringement and dilution.  See id.

Applying Litton, the Court held that none of the property- and intellectual-property-based claims were arbitrable because the arbitration agreement did not survive with respect to them.  See id. at *5-6.  First, all of the claims involved facts that occurred after the termination of the contract.  Id. at *5.  Second, the rights at issue did not "accrue" or "vest" under the contract because "plaintiff owned the rights to the intellectual property before, during, and after the agreement," and "defendant's limited right to distribute products bearing plaintiffs' intellectual property ended with the expiration of

-11-

the agreement." Id. at *6.  Finally, the rights at issue did not survive termination of the agreement because the "contractual right to use plaintiffs' intellectual property to distribute certain products terminated with the agreement." Id.

i. Claims based on alleged wrongful use or possession of property or intellectual property

With regard to Hinnant's property- and intellectual-property-based claims, Basketball Marketing is on all fours with this case.  For example, Count II of the amended complaint, for conversion, alleges that Defendants "have unlawfully deprived [Hinnant] of a right of property, including depriving him of the use and possession of [his] invention and tooling . . . without his consent and without legal justification." Am. Compl. ¶ 44. As above, the conversion claim here involves facts occurring after the termination of the Product Development Contract. Moreover, Hinnant's property rights in the tooling existed before, during, and after he entered into the Product Development Contract--notwithstanding the contract's reaffirmation and reservation of those rights--and thus did not accrue or vest under the contract.  Finally, the conversion claim does not survive termination under ordinary principles of contract because Defendants have no contractual right to post-termination use of Hinnant's tooling.

-12-

The same analysis applies with equal force to Counts
III (misappropriation of trade secret), VI (misappropriation of
invention), and X (false marking of patent).  Each of these
claims concerns tortious conduct occurring after Defendants'
rights to use Hinnant's soap brush and tooling, and the
intellectual property accompanying them, had been extinguished.[7]
Each claim is also based on an asserted property right that did
not accrue or vest under the Product Development Contract, but
rather that existed before, during, and after the contract.

ii.  <u>Other claims</u>

Counts VII (unjust enrichment) and VIII (restitution)
seek to recoup "the value of the benefit" gained by Defendants
through their allegedly wrongful appropriation of the soap brush.
These claims are based on the "tortious[ ] use[ ] [of] a trade
secret and/or invention and/or product and/or tooling owned by or
developed by [Hinnant] as aforesaid."  Am. Compl. ¶ 58.
Therefore, because they are based on the conduct underlying

---

[7]     The amended complaint is not a model of clarity.  It
vaguely alleges that the Product Development Contract expired in
"2006" or "around July 2006."  Moreover, the dates of Defendants'
alleged misconduct are not clearly alleged.  That said, there is
a genuine issue of material fact, except with respect to Count
IX, as to whether the misconduct alleged occurred after the
termination of the contract.  <u>See</u> <u>Berkery</u>, 256 F. Supp. 2d at 364
n.3.  If, however, Hinnant's claims proceed in Court and it
becomes evident that they concern pre-termination conduct, those
claims will be referred to arbitration as well.

Counts II, III, VI, and X, the arbitration clause does not survive as to these claims.

Similarly, Count I seeks an accounting of the proceeds that Defendants are alleged to have wrongfully gained by their post-termination tortious conduct.  Unlike <u>Basketball Marketing</u>, where the claim for accounting was based on a contractual obligation to "maintain accurate books and records," 2004 WL 2590506, at *5, the claim here has no contractual basis, and instead appears to be grounded in equity, and based only on Defendants' alleged post-termination tortious conduct.  As a result, the arbitration clause does not survive here either.

Finally, Count VI alleges that Defendants perpetrated a "fraud upon [Hinnant] in that, inter alia, they materially concealed from [Hinnant] that his idea for a [soap brush] . . . would be converted to the use of [Defendants] without the permission and/or knowledge of [Hinnant]."  Am. Compl. ¶ 54.  The amended complaint clarifies that this count refers to conduct allegedly occurring after the Product Development Contract had been completed, when Defendant Bender allegedly induced Hinnant to pay $6,500 to facilitate the production of 1,000 soap brushes for test marketing, which were allegedly sold by Bender without Hinnant's consent.  Am. Compl. ¶¶ 34-40.  This claim is, in essence, a claim for fraudulent inducement of the oral test marketing agreement.  Unlike Count IX, discussed above, this

-14-

fraud claim does not "involve[ ] facts and occurrences that arose before expiration" of the Product Development Contract.  <u>Litton</u>, 501 U.S. at 206.  Indeed, Count VI does not concern any rights under the Product Development Agreement at all.  Therefore, the arbitration clause does not survive as to Count VI.

     B.   <u>Scope of the Arbitration Clause</u>

       Having found that the parties' agreement to arbitrate survives the expiration of the Product Development Contract only with respect to Counts V and IX of the amended complaint, the Court must next ascertain whether Counts V and IX fall within the scope of the arbitration clause.

       The language of an arbitration clause determines its scope.  "Cases holding that the arbitration clauses at issue are narrow have generally relied on language expressly limiting the scope of the clause to specific subject matter."  <u>United Steelworkers of Am., AFL-CIO-CLC v. Rohm & Haas Co.</u>, 522 F.3d 324, 331 (3d Cir. 2008).  An arbitration clause that does not contain such language "is more akin to those arbitration clauses held to be broad."  <u>Id.</u> at 332; <u>see, e.g.</u>, <u>Miron v. BDO Seidman, LLP</u>, 342 F. Supp. 2d 324, 330 (E.D. Pa. 2004) (clause requiring arbitration of disputes "in connection with the performance or breach of this Agreement" was "to be broadly construed"); <u>Heller v. Deutsche Bank AG</u>, No. 04-3571, 2005 WL 665052, at *3-5 (E.D.

Pa. Mar. 17, 2005) (similarly worded "in connection with" clause was "broad").

When determining the scope of an arbitration agreement, the Court applies a presumption of arbitrability: "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or a . . . defense to arbitrability.'"[8]  Berkery, 256 F. Supp. 2d at 365 (quoting

_____

[8]     The concept of the "presumption of arbitrability" has been a source of some confusion.  See Marciano v. MONY, 470 F. Supp. 2d 518, 526 n.12 (E.D. Pa. 2007).  Certain decisions, including prior decisions of the Third Circuit, appear to suggest that the presumption applies "[w]hen determining both the existence and the scope of an arbitration agreement."  Trippe, 401 F.3d at 533 (emphasis added); Smith v. Radwell Int'l, Inc., No. 06-5682, 2007 WL 1814077, *2 (D.N.J. Jun. 20, 2007).  These courts erroneously rely on the Supreme Court's decision in AT&T for this proposition.  In AT&T, the Court held that "where the contract contains an arbitration clause, there is a presumption of arbitrability."  475 U.S. at 650 (emphasis added).  In other words, the existence of an agreement to arbitrate is a prerequisite to the presumption of arbitrability.  Thus, applying the presumption of arbitrability to determine the existence of an agreement to arbitrate is premature.  See Marciano, 470 F. Supp. 2d at 526 n.12 ("[T]he presumption applies only to the scope of an open-ended arbitration agreement, never to the existence of such an agreement or to the identity the parties who might be bound by such an agreement."); accord Dumais v. Am. Golf Corp., 299 F.3d 1216, 1220 (10th Cir. 2002) (citing First Options of Chi. v. Kaplan, 514 U.S. 938, 944-45 (1995) (noting that the presumption of arbitrability "arises when the parties have a contract that provides for arbitration of some issues.  In such circumstances, the parties likely gave at least some thought to the scope of arbitration.  And given the law's permissive policies in respect to arbitration, one can understand why the law would insist upon clarity before concluding that the parties did not want to arbitrate a related matter." (internal citation omitted)).

<u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983)).  In other words, "[a]n order to arbitrate should not be denied unless it may be said with <u>positive assurance</u> that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  <u>Id.</u> (quotations omitted).  Where an arbitration clause is broad, the presumption can only be overcome by an "express provision excluding a particular grievance from arbitration" or "the most forceful evidence of a purpose to exclude the claim from arbitration."  <u>AT&T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 650 (1986).

The Product Development Contract contains a broad arbitration clause, requiring arbitration of "all disputes in connection with this contract."  <u>See</u> <u>Miron</u>, 342 F. Supp. 2d at 330; <u>Heller</u>, 2005 WL 665052, at *3-5.  Therefore, a strong presumption of arbitrability applies, which can only be overcome by an "express provision excluding a particular grievance from arbitration" or "the most forceful evidence of a purpose to exclude the claim from arbitration."  <u>AT&T</u>, 475 U.S. at 650.

As noted above, Count V for breach of fiduciary duty alleges that Defendants "purported to act with respect to the interest of plaintiff in a fiduciary and/or confidential capacity," but failed to do so.  This claim is part of a dispute "in connection with" the Product Development Contract because the "confidential capacity" that Defendants allegedly failed to

maintain was a creation of the contract.  See PDC, cl. 15 ("[A]ny information of [the parties] contained in this contract [must] be held in strictest confidence.").

Count IX for breach of trust alleges that "the transfer and/or entrustment of the trade secret/idea/invention/product/ tooling by [Hinnant] to [Defendants] was induced by fraud."  This claim is also part of a dispute "in connection with" the Product Development Contract because that contract is the instrument which governed the transfer and entrustment of the soap brush and its associated intellectual property from Hinnant to Defendants.

Accordingly, both Counts V and IX fall within the scope of the arbitration clause and thus must be arbitrated.

C.    Duty of the Court upon a Finding of Arbitrability

Having found that two of Hinnant's claims are arbitrable, and as required by the Federal Arbitration Act,[9] the Court must "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9

---

[9]    The Federal Arbitration Act ("FAA") applies to any "contract evidencing a transaction involving commerce."  9 U.S.C. § 2.  "Commerce" is defined to include "commerce among the several States or with foreign nations."  Id. § 1.  Here, the Product Development Contract governed the use, development, and sale of a Philadelphia inventor's soap brush by a Maryland company that used tooling located in the People's Republic of China to manufacture samples of the soap brush and deliver them back to Philadelphia.  Therefore, the FAA governs the agreement to arbitrate contained in the Product Development Contract, which evidences a transaction involving "commerce."

U.S.C. § 4.  In addition, where the Court finds that an "issue involved in [the] suit . . . is referable to arbitration under such agreement, [the Court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  Id. § 3; see also Berkery, 256 F. Supp. 2d at 370 (staying both arbitrable and non-arbitrable claims and noting "discretion to determine whether to dismiss or stay proceedings once arbitration was compelled" (citing Seus v. John Nuveen & Co., 146 F.3d 174, 179 (3d Cir. 1998))); Miron, 342 F. Supp. 2d at 334 ("[T]he FAA's requirement that a court stay 'the trial of the action' suggests that the proceedings must be stayed in their entirety, even when the action encompasses both arbitrable and non-arbitrable claims. . . .  Because there is substantial overlap in the charges against these various Defendants . . . we elect to stay the entirety of the proceedings pending arbitration of the claims against the BDO Defendants.").

Defendants have requested a stay here.  Because there is a substantial degree of overlap between the arbitrable and non-arbitrable claims, the Court will stay proceedings with respect to all claims pending the arbitration.[10]

---

[10]   Having addressed the motion to compel arbitration and having stayed the action, the Court need not reach the pending motion to dismiss due to improper venue and forum non conveniens or transfer venue.  See Sharif v. Wellness Int'l Network, Ltd., 376 F.3d 720, 723, 726 (7th Cir. 2004) ("[T]he [district] court

III. CONCLUSION

        The motion to compel arbitration or, in the alternative, to dismiss for improper venue or forum non conveniens, or transfer venue (doc. no. 21) will be granted in part and denied in part.  Because the arbitration clause in the Product Development Contract requires arbitration of Counts V and IX, the motion will be granted as to those counts.  The motion will be denied as to the remaining counts of the amended complaint; however, the case will be stayed as to all claims pending the arbitration.  Because the motion to compel arbitration will be granted in part and the action stayed, the portion of the motion seeking dismissal for improper venue, dismissal for forum non conveniens, or transfer of venue will be

---

refused to consider the merits of the motion to compel arbitration because of the pending venue challenge.  The Federal Arbitration Act, however, states that if the parties have an arbitration agreement and the asserted claims are within its scope, the motion to compel cannot be denied. . . .  The motion to compel arbitration, rather than being superfluous, had to be addressed by the court."); accord Beer v. Nutt, No. 06-9424, 2007 WL 13100, at *4 (S.D.N.Y. Jan. 3, 2007) ("In the alternative, Defendant argues that venue is improper in the Southern District of New York and thus, this case should be dismissed.  Since I have granted Defendant's motion to compel arbitration, Defendant conceded at oral argument that it is unnecessary to reach this issue."); Alemac Ins. Servs., Inc. v. Risk Transfer Inc., No. 03-1162, 2003 WL 22024070, at *6 (S.D.N.Y. Aug. 28, 2003) (granting motion to compel arbitration and denying as moot motion to transfer venue); Wilkerson ex rel. Est. of Wilkerson v. Nelson, 395 F. Supp. 2d 281, 283 (M.D.N.C. 2005) (granting motion to compel arbitration and declining to address motion to dismiss for improper venue).

denied as moot.  Finally, Defendants' motion to strike the
amended complaint (doc. no. 18) and motion to withdraw the motion
to strike (doc. no. 22) will be denied as moot.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WAYNE HINNANT,                        :    CIVIL ACTION
                                      :    NO. 07-2632
            Plaintiff,                :
                                      :
      v.                              :
                                      :
AMERICAN INGENUITY, LLC et al.,       :
                                      :
            Defendants.               :

**O R D E R**

**AND NOW**, this **21st** day of **May, 2008**, it is hereby
**ORDERED** that Defendants' motion to compel arbitration or, in the
alternative, to dismiss for improper venue or forum non
conveniens, or transfer venue (doc. no. 21) is **GRANTED in part
and DENIED in part.**  The motion to compel arbitration is granted
as to Counts V and IX of the amended complaint, and denied as to
the remaining counts of the amended complaint.  The motion to
dismiss for forum non conveniens, or to dismiss or transfer for
improper venue is denied as moot.

      **IT IS FURTHER ORDERED** that Defendants' motion to strike
the amended complaint (doc. no. 18) and motion to withdraw the
motion to strike (doc. no. 22) are **DENIED as moot.**

      **IT IS FURTHER ORDERED** that this matter is **STAYED** until
further order of the Court.

      **AND IT IS SO ORDERED.**

                                    S/Eduardo C. Robreno
                              **EDUARDO C. ROBRENO, J.**